### CLEMENS v. LAVEILLE & MORTON.

1. Verdict for plff's. below—motion for a new trial—Held, that on the evidence the jury ought to have found for the defd.—and having found otherwise the circuit court ought to have granted a new trial—and its refusal to do so is error.

ON ERROR from St. Louis circuit court.

Opinion of the court delivered by WASH, J.

This was an action of assumpsit brought by the defendants in error against the plaintiff in error to recover the price of the work done; and materials furnished by the defendants in building a warehouse for the plaintiff in error. Laveille & Morton got judgment in the circuit court, to reverse which Clemens has come with his writ of error to this court. The defendants in error had finished off the building by putting in *tin gutters*. The plaintiff in error contended that *copper gutters* should have been furnished. Upon the evidence given the jury found for the defendants in error, and the plaintiff in error moved the circuit court to set aside the verdict and grant him a new trial, which motion was overruled, and now the only question presented for our consideration is, did the circuit court err in overruling the motion for a new trial? The evidence on this point as preserved in the bill of excep-

Verdict for plff's. below—motion for a new trial—Held, that on the evidence the jury ought to have found for the defd —and having found otherwise the circuit court ought to have granted a new trial—and its refusal to do so is error.

tions is not very clear or satisfactory. On the part of the plaintiffs below, no evidence was given as to the kind of material of which the gutters were to have been made. On the part of the defendant below, it was proved by one witness who had contracted with the defendants in error to put up for him a building similar to the one erected for the plaintiff in error and for the same price, that in a conversation with Mr. Morton one of the partners and plaintiffs below, and in reply to objections raised by the witness to the method proposed for roofing the buildings, that "Mr. Morton still insisted and said that he, Morton, would put up copper gutters extending between four and five feet up the roof to obviate the objections of witness" and "that his impresion from the whole conversation between Morton and himself was, that copper gutters were to be put upon each tenement." One other witness who had been employed by Bernard Pratte to put up a building adjoining the buildings erected by the defendants in error, and who had objected to the method proposed for roofing the several buildings stated "that Morton desired him to urge Pratte to make the change such as was made in the houses of Chouteau, Kerr & Clemens, that he (witness) stated to Morton the impossibility of securing roofs so constructed from leaking, owing to the great quantity of water collected in gutters so formed, that Morton replied he was going to put copper gutters on those houses, which would obviate the objection of deponent, but at whose expense the gutters were to be put in, Morton did not say." This was all the evidence given on this point. The defendants in error had contracted with one of the witnesses to build for him a house of precisely the same dimensions as the one put up for Clemens, and for the same price, and as to the building to be erected for the witness the undertaking is clearly shown to have been for copper gutters, and the impression of the witness was, that copper gutters were to have been furnished to the other buildings. No reason can be seen or imagined why the gutters of one building should have been of copper and those of another adjoining, of the same dimensions and built for the same price, should be of tin. The statement of Morton to the other witness referred to all the buildings. Upon this evidence we think the jury ought to have found that the gutters contracted to be put up by the defendants in error were copper and not tin gutters and have allowed accordingly, and that the circuit court erred in refusing to set aside their verdict and grant a new

trial, and the judgment of that court is therefore reversed and the cause remanded for a new trial.